*COLUMBUS & XENIA RY. CO. ET AL. v. OHIO SOUTHERN RY. CO.

1. UNCERTAINTY OF CONTRACT.

A court of equity will not decree the specific performance of a contract whose terms are so vague and indefinite as to require evidence *aliunde* to determine the duty which such a decree would impose upon the defendant.

2. INEQUITABLE NATURE OF CONTRACT.

Nor where, from the inequitable nature of the contract, and from the circumstances, it appears that the party against whom the decree is sought did not enter into the contract understandingly.

The circuit court, after stating the issue as made by the petition and answer and demurrer—a reply having been understood to have been filed to the answer, —and reading the contract between the plaintiffs and the S., J. & P. R. R. Co., which was the subject-matter of the controversy, (which contract provided that the S., J. & P. R. R. Co. should forever erect and maintain at its own expense the crossing—target, watchman's house, required under section 3333, and pay all expenses of the watchman, and repairs of target-house, crossing, etc.), then read the agreed statement of facts, which was as follows?

---

*The judgment in this case was affirmed by the Supreme Court, without report, March 11, 1889.

"It is agreed between the parties to this action, for the purpose of this suit and the issues made therein, that the following statement is to be considered as true, to-wit:

"That the Springfield, Jackson & Pomeroy Railroad was located as a narrow-gauge railroad between Springfield, in Clark county, Ohio, and Jackson, in Jackson county, Ohio, in 1877, and completed as such in the latter part of the year 1878; that on the —— day of July, 1877, the Springfield, Jackson & Pomeroy R. R. Co., a body corporate, entered into an agreement with the plaintiffs, also bodies corporate,—a copy of which is hereunto annexed, and marked 'Exhibit A,' and made part hereof. That pursuant to said agreement, the Springfield, Jackson & Pomeroy R. R. Co. constructed its railroad track at grade in said village of South Charleston across the right-of-way and track of the plaintiffs at right angles, within distance from the regular stopping station of the plaintiffs, and 365 feet distance from its own stopping station. That there was no other consideration for the use of the plaintiffs' right-of-way, being a strip of ground 100 feet in width, and its track, which is a standard gauge, by the Springfield, Jackson & Pomeroy R. R. Co., than the conditions to be performed by it, as set forth in said agreement; and that there has been no performance of said conditions either by the Springfield, Jackson & Pomeroy R. R. Co., or any of its successors, including the defendant. That said agreement was never recorded. That the said Springfield, Jackson & Pomeroy R. R. Co. acquired no other right to the use of said strip of ground from any other source than as shown by said agreement. That on the —— day of ——, 1879, the common pleas court appointed a receiver of said narrow-gauge road at the instance of the trustees for the bondholders thereof, and who continued to operate said road under the order of the court until the —— day of November, when said road, its franchises, rights, privileges, real estate, rights-of-way, the superstructure thereon, and all other appurtenances thereunto belonging, were sold at judicial sale at the door of the court house in Springfield, Ohio, to Samuel Thomas for $450,000; but that the plaintiffs were not parties to said action. That on the 3d day of November, 1879, Samuel Thomas conveyed same to Oliver S. Kelly, who, on the 15th day of December, 1879, conveyed the same to the Springfield Southern R. R. Co. for a consideration of $1,000,000, a body corporate, and which, by a decree of said court of common pleas, on the —— day of ——, changed its name to that of the Ohio Southern R. R. Co., and which is the defendant in this action. That from the date of the completion of said narrow-gauge road, it has been in continuous operation, running from eight to twelve trains daily over the same, and that ever since the execution of the agreement the Pittsburgh, Cincinnati & St. Louis R. R. Co., then and now operating the said Columbus & Xenia R. R. under lease, has run on its railroad over said crossing daily twenty regular trains and a large number of extra and special trains. That in the month of November, 1879, the track of said railroad was widened to that of a standard gauge road. That from the time of the completion of said narrow-gauge road until the present time there has been at said crossing neither a target, nor a watchman, nor a watchman's house, nor any other structures, fixtures or equipments. That after the defendant became the owner of said road, and about the —— day of February, 1884, its attention was called to said agreement, and on the —— day of March, 1884, it refused to recognize said agreement as obligatory upon it, but has always been and is ready and willing to join with the plaintiffs in the erection and maintenance of a target, watchman's house, watchman, etc., at the joint expense of the companies owning or operating said several roads. That the cost of constructing and erecting a target and watchman's house would be for the former $225, and for the latter $110,—a blue print showing the character and dimensions of which is hereunto attached and marked 'Exhibit B.' And the annual cost of maintaining said crossing would be from $650 to $1,000. (This statement as to the annual cost of maintaining said crossing is agreed upon, subject to the right of the plaintiffs to object to it as being irrelevant and incompetent.) It is further agreed that said

defendant, The Ohio Southern R. R. Co., had no actual notice of the existence of said agreement 'Exhibit A,' prior to the —— day of February, 1884."

SHAUCK, J.

This case is fruitful of questions. We do not deem it necessary to pass upon all that have been suggested by counsel. There are many of these questions, with respect to which we are inclined to view which we ought to regard rather as impressions, than conclusions reached in the case. It is first claimed on behalf of the defendant, that the contract which I have just read is void, as being against the public policy of the state, as that policy is defined in section 3333 of the statutes, which provides that in a case of this character, when two railroads cross each other at a common grade, crossings shall be made and kept in repair, and watchmen maintained thereat, at the joint expense of the companies owning the tracks,—and it further provides with respect to the management of the crossing, the approach of trains, etc. In support of the contract in this respect, it is claimed that the parties here have not undertaken to abate the precautions against accidents which, from public considerations, the statute provides for; that the contract contemplates the full compliance with the provisions of the statute as to the employment of a watchman, in which it is admitted the public are interested; but that it seeks only to charge upon one company the payment of the expense, and in that payment, it is said, the public are not interested. The statute enjoins this as an immediate duty upon both roads. In the prompt performance of that duty the public confessedly have an interest. Whether a court of equity, after the parties have failed for eight years to perform this plain duty thus solemnly imposed upon them by the statute, ought to hear the plaintiff assert that the duty was by the contract wholly shifted to the defendant, is a question which we shall not undertake to answer unless the answer is suggested by the question itself. It is further claimed by the defendant, that in this contract the senior company undertook to negotiate with the junior company with the reference only to what it already had by law, and which it did not itself possess, and that there is, therefore, a failure of consideration. The provisions of the contract in this respect, as in many others, are vague and uncertain. The grant is in these words, "That said party of the second part shall have right to construct and use its railroad as now located across the railroad and right-of-way of the party of the first part." The right thus granted, if the instrument be strictly construed, according to the decision of the Supreme Court in Railway v. Railway, 30 Ohio St., 604, 615, passed from the state to the junior road by the grant of its charter. The proper determination of this case is the only duty enjoined upon us, and it is not necessary for us to determine whether for all purposes the language of this contract ought to be construed into a grant of the right-of-way. But we are not persuaded that the plaintiffs are entitled to such liberality of construction when they seek affirmative relief with respect to this contract. We are all agreed that an obvious ground for the determination of this case is found in the continuing personal nature of some of the stipulations of this contract, and in the vague and indefinite character of others. The first and second of these conditions are that the junior road shall construct and put in at its own proper expense, said crossing, and also at its own proper expense construct the target, without specification as to the character of the target, watchman's house, or the other structures, fixtures, and equipments, without any designation of the character of the improvements that are named here, and without any designation as to what other improvements may by the parties to this contract be deemed necessary, and the same to be done to the perfect satisfaction of the party operating said Columbus & Xenia R. R. and in all respects suitable and proper for the place. And also to keep and maintain at its own expense such crossing, and all structures and fixtures appertaining thereto, in good repair and condition, and in a manner satisfactory to the party operating the said Columbus & Xenia R. R. And also at his own expense to make additions and improvements such as the business of the parties may re-

quire; and, still further, to keep a watchman, who shall be satisfactory to the corporation operating the Columbus & Xenia R. R. and to remove upon its request any watchman and to furnish another suitable person in his stead.

Now, in the light of the stipulations of this contract, a decision of the Supreme Court in 13th O. S., 544, in the case of the Port Clinton R. R. Co. v. Columbus & Toledo R. R. Co., it seems to us is conclusive of the rights of the parties with respect to the relief here prayed for. This also was a suit for specific performance, and in passing upon it the court have collected some authorities which I find it more convenient to read than to collect them otherwise. (The court here read from vol. 13 Ohio State Reports, page 549 and page 551.) Applying these rules to the case in hand; we have no authority to determine what would be a proper target or a proper watchman's house, or what other fixtures are necessary or their character. If we should decree their construction according to the diagrams submitted, we should plainly add to the stipulations of the parties in this case, as they have not contracted with reference to them. And if we should decree specific performance without some definite instruction, we could never determine, except by evidence *aliunde*, whether the decree had been obeyed. Specific performance cannot be decreed because the contract does not itself furnish a standard by which performance is to be determined.

Another equally safe ground of decision is found in the unconscionable character of this contract. While we have sought to abstain from the expression of an opinion as to whether anything passes to the junior company by this agreement, it is determined by the Supreme Court in the 30 Ohio State, that the senior company had nothing to give except what, according to that case, was found to be worth only $60, and what in this case would certainly be worth but little, if any more. We are asked to decree, as compensation for this, the payment and expenditure of the one-half of from $1,200 to $1,500, in the first year, and thereafter of the one-half of from $650 to $1,000, annually during the joint use of the crossing. We are not advised of any other case in which a court has been asked to decree the specific performance of so unjust and inequitable a contract. Cases much less striking in this respect have elicited from courts of equity such expressions as "Equity will not decree a specific performance if there is inequality or hardship in the contract," or "where there is reason to doubt whether the defendant entered into the contract understandingly;" "equity will not promote injustice;" "equity will not decree a specific performance of hard and unconscionable bargains," and many other forms of expression used to convey the prevailing rule that equity will interfere only for the promotion of equity. While the delay of the plaintiff to sue for the specific performance of this contract might not of itself be sufficient reason for refusing the relief, it is a considerable circumstance under the rule as stated by Story, that "if a party applies for relief of this character after a long lapse of time, unexplained by equitable circumstances, his bill will be dismissed." In this case there is no explanation whatever for the delay, and in the meantime the defendant acquired its rights in the junior road for a valuable consideration, and without notice of the rights now claimed by the plaintiffs. With respect to specific performance as to other branches of equitable jurisdiction, the rule is that equity will not interfere where legal remedies are adequate. The petition in this case is defective, because it fails to show any necessity for the exercise of such jurisdiction. What the legal remedy might be, we need not determine; if it should be found to be compensation for the value of the right-of-way as in proceedings to appropriate, as held by the Supreme Court in 43 Ohio State, it would be exactly adjusted to the plaintiff's right. There are other reasons why the relief prayed for should be denied, but those stated are sufficient. The petition will be dismissed and defendant will have judgment for costs.

Charles Darlington, for plaintiffs.
Oscar T. Martin, for defendant.